ORDERED in the Southern District of Florida on October 16, 2007,



A. Jay Cristol, Chief Judge Emeritus
United States Bankruptcy Court

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA

In re:                                    Case No.: 05-16028-BKC-AJC
                                          Chapter 13

Richard Scott & Julissa Green

        Debtor(s)
_____/

## ORDER DISCHARGING ORDER TO SHOW CAUSE
## AS TO WHY BRIAN DILKS, DILKS & KNOPIK, LLC
## AND AMTRUST BANK SHOULD NOT BE SANCTIONED

THIS CAUSE came before the Court for hearing on August 7, 2007 upon this Court's

Order to Show Cause Why Brian Dilks, Dilks & Knopik, LLC and AmTrust Bank Should not be

Sanctioned, and Why Brian Dilks and Dilks & Knopik, LLC Should Not be Prohibited From

Filing Applications to Withdraw Unclaimed Funds in any United States Bankruptcy Court.

**I.**    **INTRODUCTION.**

As a result of this Court's concerns regarding why unclaimed funds were applied for by a

funds locator for a creditor not entitled to the funds, this Order to Show Cause was issued to rectify the problem in this case and other cases before this Court. Specifically, the Order to Show Cause in this case was issued to ensure there was no intentional, illegal or unethical actions or conduct by Brian Dilks, Dilks & Knopik, LLC or AmTrust Bank and to ensure the Court's Registry funds are properly administered.

Fortunately, after considering the evidence presented, it is clear to this Court that there was no intentional, illegal or unethical conduct by Brian Dilks, Dilks & Knopik, LLC, AmTrust Bank or any other party and accordingly the Order to Show Cause is discharged. Notwithstanding the absence of misconduct, there is a complicated set of circumstances consisting of minor mistakes and commonly followed procedures which render the Court's Registry funds vulnerable to being distributed to the wrong party. It is this issue which the Court seeks to illuminate and hopefully eliminate with regard to future cases in this jurisdiction and throughout the United States.

## II.    UNCLAIMED FUNDS IN BANKRUPTCY CASES.

Due to the nature of bankruptcy cases, there are often funds which a Chapter 7, 11 or 13 Trustee seek to disburse but cannot do so for a myriad of reasons.[1] Pursuant to the applicable Federal Rules of Bankruptcy Procedure and Local Rules, such funds are required to be deposited in the Registry of the U.S. Bankruptcy Court with a list of the creditors entitled to receipt of such funds. See Federal Rule of Bankruptcy Procedure 3011 and 11 U.S.C. §347(a).

The volume of undisbursed funds deposited in the Registry of the U.S. Bankruptcy Court has been sufficiently large to create a cottage industry of companies who seek to match the

---

[1] Such reasons include wrong or changed addresses and change of party as a result of sale or assignment.

2

undisbursed funds with the person or entity legally entitled to such funds for an agreed fee (normally an agreed percentage of the funds collected). The companies performing this service are commonly referred to as unclaimed funds locators.

The procedure followed by the Trustees is to file a "Notice of Deposit of Funds with the U.S. Bankruptcy Court Clerk" together with the list required pursuant to Federal Rule of Bankruptcy Procedure 3011 setting forth the names, claim numbers and addresses of the creditor(s)/debtor(s) and the amounts to which they are entitled. This notice and attached lists enables the Trustee to effect closing of the estate.

The filing of the Notice of Deposit of Funds also triggers the unclaimed funds locators to review the list of creditors to whom the unclaimed funds are listed as owed, locate the creditor (or the successor/assignee) and to be retained to collect the funds on behalf of the creditor.

Based on the verified pleading of the unclaimed funds locator in this case, Dilks & Knopik, LLC, due diligence was performed as to locating the proper entity, i.e., ensuring the entity listed on the Trustee's 3011 Notice was the same entity it was retained by to collect the funds. There is no other due diligence customarily performed by the unclaimed funds locator, rather, after being retained the unclaimed funds locator provides basic information to the creditor and relies on the creditor to advise if the debt is not owed.

Once the unclaimed funds locator is retained and obtains authorization from the creditor to proceed by virtue of a power of attorney, the local form (LF-27) Application to Withdraw Unclaimed Funds, together with a local form Affidavit of Claimant and duly executed Corporate Power of Attorney attached thereto is submitted to the Clerk of Court's Financial Administrator for review. The Financial Administrator performs a review to ensure the requisite information is

provided, original signatures are included, and the funds have not already been disbursed by prior Court Order, among other items.  If the Application is facially satisfactory, it is filed with the Clerk and submitted to the Court for *ex parte* consideration pursuant to the Local Rules.[2]

While it would appear at first blush that the above process would almost always ensure the unclaimed funds are disbursed to the proper party, this Court's review of several cases wherein unclaimed funds were applied for by unclaimed funds locators on behalf of creditors not entitled to the funds raised a red flag.  This Court became concerned that either the system was being manipulated by predatory unclaimed funds locators seeking to make a fee for collections it knew were being collected for a creditor not entitled to the funds or there were fault lines in the system which required corrective action.

After a full review of the facts of this case and applicable procedures, it is clear to this Court that while a problem does exist with regard to unclaimed fund applications for mortgage related indebtedness, it is not a problem caused by intentional, unethical or illegal conduct, rather, it is a result of minor mistakes, lack of sufficient due diligence and procedures which, if altered, would rectify the problem.

## III.    PROBLEM PRIMARILY RELATED TO MORTGAGE INDEBTEDNESS.

This Court's review of the record in this case as well as several other similar cases in this jurisdiction wherein funds have been applied for on behalf of a creditor not entitled to the funds, reveals that the problem is primarily related to funds deposited in the Court Registry as a result of a Debtor's Chapter 13 Plan payments to secured lenders.  Customarily, the Debtor is making plan payments on a Plan and somewhere along the process seeks to refinance or sell the property

---

[2] The Local Rules and Procedures may vary among the various bankruptcy jurisdictions, but are materially similar in most respects.

subject to a mortgage lien, satisfies the secured lender in full and seeks a dismissal of the bankruptcy case.   The Chapter 13 Trustee is often left with Plan payments, sometimes a significant amount, which are disbursed to and subsequently returned by the secured creditor as the creditor was already satisfied from the sale or refinance.  It is unclear whether the secured creditor customarily informs the Chapter 13 Trustee that its claim has been satisfied, or simply returns the funds.  However, in numerous cases the Chapter 13 Trustee filing a Notice of Deposit of such funds with the Bankruptcy Clerk designates the secured creditor as being owed the funds pursuant to its claim notwithstanding that the secured creditor has been paid in full.  The Notice is mailed to the affected creditors, the Debtor, Debtor's counsel and the United States Trustee. The unclaimed funds locator obtains the public record information and seeks to locate the affected creditors to collect the funds on their behalf.

In each of the cases monitored by this Court, including this case, it is clear that various parties along the line could do more to ensure that Court Registry funds are not inadvertently disbursed to the wrong party.

IV.    **FACTS OF THIS CASE LEADING TO ORDER TO SHOW CAUSE.**

(i)    Richard Scott Green and Julissa Green filed for Chapter 13 relief on June 20, 2005.

(ii)    The Debtors had a mortgage loan with AmTrust Bank, f/k/a Ohio Savings Bank, who were treated in the Debtor's Plan.

(iii)    On or about October 27, 2006, the Debtors filed a Motion to Dismiss the Chapter 13 Case [CP #47] as they had arranged for the refinancing of their mortgage and satisfied AmTrust Bank f/k/a Ohio Savings Bank.  The AmTrust Bank loan was

paid in full on January 10, 2007.

(iv)     On January 25, 2007, the Chapter 13 Trustee mailed $30,695.02 to AmTrust Bank emanating from the Debtor's Chapter 13 Plan payments.  AmTrust Bank returned the $30,695.02 to the Chapter 13 Trustee as it had already been paid in full on or about January 10, 2007.

(v)      On February 23, 2007, the Chapter 13 Trustee filed a Notice of Deposit of Funds with the U.S. Bankruptcy Court Clerk [CP #57].  The Chapter 13 Trustee's exhibit to its Notice of Deposit listed $30,965.02 as being owed to Ohio Savings Bank k/n/a AmTrust Bank.

(vi)     Upon Dilks & Knopik, LLC's discovering the existence of the Notice of Deposit, at or around May 7, 2007, it approached Ohio Savings Bank's successor, AmTrust Bank, to collect the funds on its behalf.

(vii)    Dilks & Knopik dealt with AmTrust Bank's general counsel, Roy E. Lachman. On May 15, 2007, Mr. Lachman executed a Service Agreement with Dilks & Knopik, LLC to start the process of recovering the funds.  At or around that time, Dilks & Knopik forwarded Mr. Lachman a limited power of attorney and basic court information regarding the Debtors.

(viii)   On May 29, 2007, Dilks & Knopik filed an Application to Withdraw Unclaimed Funds on behalf of AmTrust Bank for the $30,695.02 held in the name of Ohio Savings Bank. [CP #62].

(ix)     On or about June 11, 2007, this Court scheduled a hearing on the Application to Withdraw Unclaimed Funds for June 27, 2007 at 10:30 a.m. [CP #63].  The Order

stated no withdrawal of the application will be deemed effective and the hearing shall proceed as scheduled.

(x)      Upon receipt of the Order on or about June 14, 2007, Dilks & Knopik promptly asked AmTrust Bank to provide further information regarding the claim.

(xi)     On June 19, 2007, Dilks & Knopik received notice from Mr. Lachman that the loan had been paid off several months earlier and AmTrust Bank had returned the funds to the Trustee.  He advised that under the circumstances, he did not see any basis for the claim and requested a withdrawal of the claim.

(xii)    On the same day, June 19, 2007, Dilks & Knopik forwarded a Release of Interest to AmTrust Bank to be executed.  AmTrust Bank immediately executed the Release of Interest and provided it to Dilks & Knopik, LLC.

(xiii)   At or around the same time, Dilks & Knopik, LLC faxed the Debtors' counsel a copy of the Release of Interest.

## V.    COMMERICALLY PRUDENT PROCEDURES WILL PREVENT UNCLAIMED FUND PROBLEM.

Having set forth common facts and procedures relating to unclaimed funds deposited with the U.S. Bankruptcy Clerk, as well as the facts of this case, this Court believes there are prudent changes to procedures and additional due diligence which will help ensure there are no unclaimed funds applied for by or disbursed to the wrong party.  Each of the parties involved in the process, i.e., Chapter 13 Trustee, Debtor, Debtor's counsel, unclaimed funds locator and affected creditors, have an important role to play in this regard.  Set forth below are this Court's recommendations which each of the parties should seriously consider adopting to resolve the problem outlined herein.

7

A.      **CHAPTER 13 TRUSTEE'S NOTICE OF DEPOSIT OF FUNDS.**

This Court believes it would be helpful and appropriate for the Chapter 13 Trustee to note in her standard Notice of Deposit of Funds with the U.S. Bankruptcy Court Clerk if funds have been disbursed to and subsequently returned by a particular creditor who is then listed on the Trustee's list of entities owed funds pursuant to Federal Rule of Bankruptcy Procedure 3011. Such a notation in this case could have provided all parties, including the unclaimed funds locator, Dilks & Knopik, LLC with notice that the funds have been returned by the creditor. This should not cause an undue burden upon the Chapter 13 Trustee.

B.      **UNCLAIMED FUNDS LOCATOR DUE DILIGENCE.**

Once the Chapter 13 Trustee files her Notice of Deposit of Funds with the U.S. Bankruptcy Clerk and 3011 list of creditors allegedly entitled to such funds, the unclaimed funds locator (in this case Dilks & Knopik, LLC) would be well advised in mortgage related indebtedness cases to require an affidavit from the client for whom it is collecting the mortgage indebtedness stating that the creditor is the proper party and is owed the funds from the Debtor. The unclaimed funds locator should also check the Court docket to help determine whether there has been a refinance of the subject indebtedness indicating the secured lender may have been satisfied. Finally, although not required by applicable local rules, the unclaimed funds locator should include the Debtor and Debtor's counsel on the Application to Withdraw Funds.[3]

The unclaimed funds locator in this case, Dilks & Knopik, LLC, suggested each of the above steps and advised the Court that it incorporated these procedures into its business practices when collecting unclaimed mortgage related indebtedness. The Court believes these basic steps

---

[3] The Local Rules Committee may also deem it appropriate to require all applications for unclaimed funds to include notice to the Debtor and Debtor's counsel.

are commercially prudent, will materially reduce the prospect of an application for funds no longer owed to the creditor and are not overly burdensome.

### C.    CREDITOR DUE DILIGENCE.

The creditor for which the unclaimed funds locator is collecting should ensure it performs the requisite due diligence prior to giving final authorization for the unclaimed funds locator to proceed with the filing of an Application to Withdraw Unclaimed Funds.  The creditor must be responsible for ensuring it is the proper party and that it is owed the funds being sought pursuant to the unclaimed fund application.[4]

### D.    DEBTOR AND DEBTOR'S COUNSEL'S DUE DILIGENCE.

Finally, but by no means least importantly, the Debtor and Debtor's counsel must ensure that they promptly notify the Chapter 13 Trustee once a satisfaction of secured creditor has been consummated and seek return of any Plan payments which the Trustee is holding for the secured creditor to the extent owed to the Debtor.  Had the Debtor or Debtor's counsel taken such action at any point in the process prior to the Chapter 13 Trustee filing its Notice of Deposit of Funds on February 23, 2007, and Dilks and Knopik, LLC filing its Application to Withdraw Unclaimed Funds on May 29, 2007, this matter would likely have never arisen.  The Debtor and Debtor's

---

[4] It was this Court's scheduling of a hearing on Dilks & Knopik, LLC's Application which caused Dilks & Knopik, LLC to inquire further with AmTrust Bank and AmTrust Bank's discovery that it already had been paid in full thus resulting in a Release of Interest being executed by AmTrust Bank.

counsel received notice of the Chapter 13 Trustee's "Notice of Deposit of Funds With the U.S. Bankruptcy Court Clerk" but took no action to seek recovery of their funds. The Debtor and Debtor's counsel's inaction is curious in light of the significant amount being held by the Chapter 13 Trustee and deposited into the Court Registry. This Court expects greater diligence by the Debtor and Debtor's counsel, particularly when a Chapter 13 is dismissed by the Debtor based on a refinance or sale wherein the secured creditor is satisfied in full from the closing proceeds. Accordingly, it is

**ORDERED AND ADJUDGED** as follows:

This Order to Show Cause is discharged as the Court finds that there was no intentional, illegal or unethical conduct by Brian Dilks, Dilks & Knopik, LLC or AmTrust Bank. To the contrary, the problem of collection of unclaimed funds for a creditor who is no longer owed the funds is the result of minor mistakes by various parties in a complicated set of circumstances. While the mistakes are minor, the problem is not, as it is not acceptable to this Court or the process for funds held in the Registry to be vulnerable for disbursement to the wrong parties. Accordingly, this Court has detailed the factual and procedural issues relating to those circumstances creating the problem and has recommended commercially prudent procedures to all parties in order to prevent the problem from occurring in the future. This Court implores all parties to implement the procedures to eradicate this problem.

# # #

cc:    Thomas L. Abrams, Esq., Gamberg & Abrams, 1776 N. Pine Island Road, Suite 309, Fort Lauderdale, FL 33322, shall mail a conformed copy of this Order to all interested parties immediately upon receipt of this Order, and shall file a Certificate of Service with the Clerk of the Court.

10